## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
_____
                                    )
BOBBY CANDRA, ZHAFIRAH CANDRA,      )
ALBERT CANDRA, and MUHAMMAD CANDRA, )
                                    )
          Petitioners/Plaintiffs,   )
                                    )
v.                                  )      Civil Action
                                    )      No. 18-10823-PBS
CHRIS M. CRONEN, TIMOTHY STEVENS,   )
and KIRSTJEN M. NIELSEN,            )
                                    )
          Respondents/Defendants.   )
_____)
```

### MEMORANDUM AND ORDER

February 21, 2019

Saris, C.J.

### INTRODUCTION

Plaintiffs Bobby Candra, an Indonesian national, and his three U.S. citizen children bring this action against a number of government officials to challenge U.S. Immigration and Customs Enforcement ("ICE")'s denial of Candra's most recent application for an administrative stay of removal. Candra brings a petition for a writ of habeas corpus alleging that ICE's denial of his stay application and attempt to remove him violate due process. The Candra Children bring an action under the Administrative Procedure Act ("APA") alleging that the denial was an abuse of discretion and a violation of their own Fifth Amendment due process rights. The Government has moved to

1

dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

After hearing, the Government's motion to dismiss (Docket No. 25) is **ALLOWED** without prejudice.

**FACTUAL BACKGROUND**

## I.  The Parties

Candra, an Indonesian national, has lived and worked in the United States since 2000. He resides with his wife and children in Somersworth, New Hampshire. For almost seven years, he has worked as a machine operator and maintenance technician for Natural Rocks Ice Company in Eliot, Maine. He is an active member of his community and participates in activities at his children's schools.

The Candra Children, a daughter and two sons, are all U.S. citizens born in New Hampshire. Candra's daughter, Zhafirah, 15, attends Somersworth High School and Career Training Center. She plans to matriculate in college and hopes to become an environmental engineer. Candra's older son, Albert, 14, attends Somersworth Middle School. Candra's younger son, Muhammad, is six years old. None of the three children speaks, reads, or writes Indonesian.

Candra describes his family as "moderate" Muslims. If he is deported and his family follows him to Indonesia, he believes

that his children will face discrimination by religious and anti-American extremists. He also believes that Indonesian law will require his children to eventually choose between their Indonesian and U.S. citizenships. He is particularly concerned about Zhafirah's future in Indonesia because she will have to wear a hijab and will not receive the mental health care she needs.

Defendants are two local officials from ICE and the U.S. Secretary of Homeland Security, who oversees ICE.

## II.  Candra's Immigration History

Candra entered the United States in August 2000 on a B-1 nonimmigrant visitor visa valid for three months. He overstayed his visa and was ordered removed on May 22, 2006. He did not leave the United States, and ICE never removed him.

In May 2013, ICE placed Candra under an order of supervision requiring him to report monthly to the ICE office in Manchester, New Hampshire. Two months later, he applied to ICE for a one-year administrative stay of removal, which ICE granted. He sought and received a similar one-year stay each year from 2014 to 2016.

In January 2017, Candra applied for another stay of removal. ICE denied his application on February 8, 2017. He reapplied on September 13, 2017 and was again denied. ICE's denials came on form letters without any factual basis or

3

reasoning. Instead, the letters stated simply that ICE "carefully reviewed [his] file, as well as the factors addressed in the Application for a Stay of Deportation or Removal," and "determined that the grant of such discretionary relief [was] not sufficiently warranted." Docket No. 3, Exs. P-Q. Plaintiffs allege that ICE did not in fact engage in any analysis of Candra's circumstances and instead has a blanket policy of denying stay applications.[1]

Later that month, Candra asked the Board of Immigration Appeals ("BIA") to reopen his removal proceedings so that he could seek relief from his removal order. The BIA denied the motion to reopen on February 27, 2018. Candra's then-counsel did not inform him that his motion had been denied until more than thirty days had passed. As a consequence, Candra missed the deadline for seeking review of the BIA's denial of his motion to reopen in the First Circuit. On April 27, 2018, Candra asked the BIA to reissue its decision to allow him an opportunity to file

---

[1]    Soon after Candra received the September letter, he and fifty other Indonesian nationals brought suit seeking to stay their removals to permit them to file motions to reopen their removal proceedings. See Devitri v. Cronen, 289 F. Supp. 3d 287, 289-90 (D. Mass. 2018), appeal dismissed as moot, No. 18-1281 (1st Cir. Feb. 6, 2019). Candra withdrew from that lawsuit in January 2018 because most of the plaintiffs were Christian and their claims were based on the persecution of Christians in Indonesia by religious fundamentalists. See id. at 289 n.2.

a petition for review with the First Circuit. It is not clear whether the BIA has ruled on this request.

All the while, Candra has been regularly reporting to ICE. Compl. ¶ 33. During an early April 2018 visit, ICE attached an ankle bracelet to him and ordered him to report back on April 13 with proof of a plane ticket to leave the United States on or before May 3, 2018. Id. Candra purchased a plane ticket and reported to ICE as required on April 13. Compl. ¶ 34.

### III. **Plaintiffs' Lawsuit**

Plaintiffs filed suit on April 27, 2018. The complaint pleads two causes of action challenging ICE's September 2017 denial of Candra's application for a stay of removal. In Count I, Candra brings a petition for a writ of habeas corpus alleging that, after ICE granted him four prior stays of removal, ICE's denial of his latest stay application and subsequent attempt to remove him violate his Fifth Amendment due process rights. Specifically, he alleges that the agency did not consider the unique circumstances of his situation or give him a chance to challenge his removal. In Count II, the Candra Children bring a claim under the APA arguing that ICE's denial of the stay application was arbitrary and capricious and an abuse of

discretion and violated their due process rights by forcing them to leave the United States when their father is removed.[2]

Plaintiffs ask the Court to stay Candra's removal until the BIA rules on his latest motion to reopen and he exhausts his administrative and judicial challenges to removal. They also request an injunction vacating ICE's denial of his stay application and requiring ICE to grant any future stay applications unless it makes findings based on the evidence before it to support its exercise of discretion to deny the stay.

After an emergency hearing, the Court issued an order staying Candra's removal pending further adjudication of these claims. Plaintiffs also moved for a preliminary injunction and stay of Candra's removal. The Government moved to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

---

[2]     In the complaint and their briefs, Plaintiffs suggest that the Candra Children are under habeas "custody" because of their de facto deportation. They never fully develop this argument, and it is without merit because they are not in custody. See Jones v. Cunningham, 371 U.S. 236, 243 (1963) (requiring that the government "significantly restrain [the individual's] liberty to do those things which in this country free men are entitled to do" to qualify as in "custody" for the purposes of habeas corpus).

## DISCUSSION

I.   **Subject Matter Jurisdiction**

   A.   **Legal Standard**

   To survive a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of establishing that subject matter jurisdiction exists. See Calderón–Serra v. Wilmington Tr. Co., 715 F.3d 14, 17 (1st Cir. 2013). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).

   B.   **Jurisdictional Provisions of the Immigration and Nationality Act**

   The Government points to three provisions of the Immigration and Nationality Act ("INA") that it argues deprive this Court of subject matter jurisdiction to adjudicate one or both of Plaintiffs' claims. The First Circuit has emphasized that "interpreting [these] jurisdiction limiting provisions . . . requires a close textual reading and that restrictions on jurisdiction should conform tightly to the precise language chosen by Congress." Prado v. Reno, 198 F.3d 286, 290 (1st Cir. 1999).

   First, under 8 U.S.C. § 1252(g),

   Except as provided in this section and notwithstanding any other provision of law (statutory or

7

nonstatutory), including section 2241 of Title 28, or
any other habeas corpus provision, and sections 1361
and 1651 of such title, no court shall have
jurisdiction to hear any cause or claim by or on
behalf of any alien arising from the decision or
action by the Attorney General to commence
proceedings, adjudicate cases, or execute removal
orders against any alien under this chapter.

This provision strips all courts of jurisdiction to hear claims

that fall within its ambit. See Aguilar v. U.S. Immigration &

Customs Enf't Div. of Dep't of Homeland Sec., 510 F.3d 1, 11 &

n.2 (1st Cir. 2007). But it applies only to claims challenging

decisions or actions made in commencing proceedings,

adjudicating cases, and executing removal orders, the three

discretionary stages of the removal process specifically listed

in the statute. See Reno v. Am.-Arab Anti-Discrimination Comm.,

525 U.S. 471, 482, 486-87 (1999).

Second, 8 U.S.C. § 1252(b)(9) states that:

Judicial review of all questions of law and fact,
including interpretation and application of
constitutional and statutory provisions, arising from
any action taken or proceeding brought to remove an
alien from the United States under this subchapter
shall be available only in judicial review of a final
order under this section. Except as otherwise provided
in this section, no court shall have jurisdiction, by
habeas corpus under section 2241 of Title 28 or any
other habeas corpus provision, by section 1361 or 1651
of such title, or by any other provision of law
(statutory or nonstatutory), to review such an order
or such questions of law or fact.

As a "judicial channeling provision," § 1252(b)(9) "was designed

to consolidate and channel review of all legal and factual

8

questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." Aguilar, 510 F.3d at 9, 11. The provision does not bar district courts from hearing "claims that are independent of, or wholly collateral to, the removal process." Id. at 11. In determining whether § 1252(b)(9) bars a specific claim, courts consider if the alien can raise the claim during the administrative process and then at the court of appeals and how frequently the claim is raised. Id. at 13-14.

Finally, 8 U.S.C. § 1252(a)(2)(B)(ii) strips courts of jurisdiction over any "decision or action . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of" asylum. This provision bars judicial review of decisions made discretionary by statute, but not those made discretionary by agency regulation. Kucana v. Holder, 558 U.S. 233, 236, 251 (2010) (reaffirming "the presumption favoring judicial review of administrative action").

**C. Analysis**

*1. Count I: Candra's Habeas Petition*

In Count I, Candra brings a petition for writ of habeas corpus challenging ICE's denial of his stay application and its attempt to remove him on due process grounds. Section 1252(g)

9

strips courts of jurisdiction over an alien's challenge to a denial of a stay application because the stay "is a component of the decision to execute a [removal] order." Moussa v. Jenifer, 389 F.3d 550, 554 (6th Cir. 2004); see also Sharif ex rel. Sharif v. Ashcroft, 280 F.3d 786, 787 (7th Cir. 2002) (relying on similar reasoning to conclude that § 1252(g) barred the district court from staying the aliens' removal pending further administrative review); Mapoy v. Carroll, 185 F.3d 224, 228 (4th Cir. 1999) (same for review of the denial of a motion for a stay of deportation by the BIA). The decision to stay removal is part and parcel of the administrative process of executing a removal order: A decision not to grant a stay of removal is in effect a decision to execute a removal order, and vice versa. The denial of a stay application fits cleanly within the category of decisions that § 1252(g) bars courts from second-guessing.

Candra's attempt to frame his claim in due process language does not change this result. Section 1252(g) bars "any cause or claim" that arises from executing a removal order. 8 U.S.C. § 1252(g) (emphasis added). It applies to constitutional as well as statutory claims. See Silva v. United States, 866 F.3d 938, 941 (8th Cir. 2017); Elgharib v. Napolitano, 600 F.3d 597, 605 (6th Cir. 2010); see also Am.-Arab Anti-Discrimination Comm., 525 U.S. at 487-92 (holding that § 1252(g) deprived the district court of jurisdiction over claims that certain aliens were

unconstitutionally targeted for deportation because of their affiliation with a political unpopular group).

Candra argues in his preliminary injunction briefing that applying § 1252(g) to bar his claim violates the Suspension Clause. In opposing the Government's motion to dismiss and at the hearing, the plaintiffs appear to have abandoned this argument. In any event, the case does not raise Suspension Clause concerns.

Congress may provide adequate substitutes for habeas corpus without offending the Suspension Clause. See I.N.S. v. St. Cyr, 533 U.S. 289, 314 n.38 (2001). Courts generally "have rejected Suspension Clause challenges [to jurisdiction-stripping provisions of the INA] on the ground that a motion to reopen plus a petition for review in the court of appeals would be an adequate substitute for habeas corpus." Devitri v. Cronen, 289 F. Supp. 3d 287, 293 (D. Mass. 2018), appeal dismissed as moot, No. 18-1281 (1st Cir. Feb. 6, 2019). The BIA ruled on and rejected Candra's motion to reopen, and, although he did not seek review of the BIA's ruling in the First Circuit within the prescribed time limit, review was available to him.[3] Cf. Sharif, 280 F.3d at 788 (noting that, if the aliens had a due process

---

[3]    Candra mentions the fact that his chance to appeal to the First Circuit should not count because his lawyer did not tell him about the BIA decision, but he never fleshes out this argument.

argument concerning faulty notice in connection with their removal proceedings, they should have challenged it through the agency and to the court of appeals). The availability of judicial review in this case distinguishes it from Devitri, where this Court held that the application of § 1252(g) to bar claims by aliens seeking to file motions to reopen their immigration proceedings with the BIA would violate the Suspension Clause because the aliens claiming persecution would be deported before receiving decisions on those motions. See 289 F. Supp. 3d at 293-94. Count I is therefore dismissed for lack of subject matter jurisdiction.

2.    *Count II: Candra Children's Claim*

In Count II, the Candra Children challenge the denial of their father's application for a stay of removal. They argue both that ICE denied their father's application in violation of the regulation governing administrative stays of removal and that ICE's denial violated their substantive and procedural due process rights.

The Government contends that three jurisdictional provisions in the INA require dismissal of this claim. The Government first points to § 1252(g), but the provision by its plain language applies only to claims brought "by or on behalf of any alien." 8 U.S.C. § 1252(g). Count II is not brought by or on behalf of Candra, but by the Candra Children, who are U.S.

citizens. They allege that they have distinct rights and that the denial of their father's stay application harms them separately. Keeping with the First Circuit's admonition to read the INA's jurisdictional bars narrowly, see Prado, 198 F.3d at 290, the Court holds that § 1252(g) does not bar it from hearing the Candra Children's APA and constitutional claims, see Hamdi ex rel. Hamdi v. Napolitano, 620 F.3d 615, 621-23 (6th Cir. 2010) (involving a similar claim brought by the U.S. citizen minor child of an alien ordered removed).

Nor does § 1252(b)(9) require dismissal of Count II. Section 1252(b)(9) is a "judicial channeling provision, not a claim-barring one." Aguilar, 510 F.3d at 11. It does not cover "claims that cannot effectively be handled through the available administrative process." Id. Although the First Circuit has not ruled, other circuits have split on whether § 1252(b)(9) bars this Court from adjudicating the Candra Children's claims. Compare Hamdi, 620 F.3d at 626-27 (holding that § 1252(b)(9) did not bar a child's claim that his mother's removal would violate his constitutional rights), with Duron v. Johnson, 898 F.3d 644, 647 (5th Cir. 2018) (reaching the opposite conclusion regarding two children's claim that their constitutional right to family association was violated by their father's removal). While the legal issue is complex, the Government has not explained how the Candra Children could assert their separate rights under the

13

Constitution or APA in their father's removal proceedings. These claims fall outside the administrative process that § 1252(b)(9) aims to protect from piecemeal litigation. <u>See</u> <u>Aguilar</u>, 510 F.3d at 10. Accordingly, I find <u>Hamdi</u>'s conclusion persuasive.

Finally, because ICE's discretion to grant stays of removal comes from a regulation, not a statute, <u>see</u> 8 C.F.R. § 241.6, § 1252(a)(2)(B)(ii) also does not preclude judicial review of Count II, <u>see</u> <u>Kucana</u>, 558 U.S. at 236.

Having addressed the INA's jurisdictional bars, the Court concludes that it has subject matter jurisdiction over the constitutional claims of the Candra Children in Count II. 28 U.S.C. § 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In their constitutional claims, the Candra Children allege that ICE's denial of their father's stay application violated their procedural and substantive due process rights. This claim arises from the Constitution and thus fits within this grant of federal question jurisdiction. <u>See</u> <u>Hamdi</u>, 620 F.3d at 624 (holding that the district court had federal question jurisdiction to hear a child's claim that DHS violated his constitutional rights by issuing an order of removal against his mother).

Whether the Court has jurisdiction over the Candra Children's claim that ICE violated its own regulations in

denying their father's stay application is a far more complex
question. The Candra Children argue that the Court has
jurisdiction via § 1331 and the APA. See Conservation Law
Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996) ("While the
APA does not provide an independent source of subject matter
jurisdiction, it does provide a federal right of action where
subject matter jurisdiction exists under 28 U.S.C.
§ 1331 . . . ."). However, in Ardestani v. I.N.S., the Supreme
Court stated that "immigration proceedings . . . are not
governed by the APA." 502 U.S. 129, 133, 139 (1991) (holding
that an alien who prevails in removal proceedings is not
entitled to attorney's fees and costs under the Equal Access to
Justice Act because the adjudicatory provisions of the APA do
not govern removal proceedings).

Circuit courts have interpreted Ardestani to foreclose only
application of the adjudicatory provisions of the APA to removal
proceedings. See, e.g., Smriko v. Ashcroft, 387 F.3d 279, 291 &
n.7 (3d Cir. 2004) (involving a challenge to immigration
streamlining provisions). Under this interpretation, judicial
review under the APA is still available for certain agency
decisions not committed to agency discretion in the immigration
context outside the confines of removal proceedings. See id.;
Howell v. I.N.S., 72 F.3d 288, 293 (2d Cir. 1995); see also
Dhakal v. Sessions, 895 F.3d 532, 538 (7th Cir. 2018)

15

(recognizing the district court's jurisdiction under the APA and § 1331 to hear a challenge to a denial of an affirmative application for asylum). But see Moreno v. Bureau of Citizenship & Immigration Servs., 185 F. App'x 688, 689 (9th Cir. 2006) (unpublished) (declining to engage in APA review of USCIS's refusal to grant an application for a replacement alien registration card).

In Hamdi, the Sixth Circuit interpreted Ardestani to bar jurisdiction under the APA and § 1331 over a U.S. citizen child's constitutional claims seeking to cancel his parent's removal order. 620 F.3d at 623-24. Here, the Candra Children do not directly challenge their father's removal order but instead ICE's denial of their father's application for a stay of removal. A decision on a stay application is made after a removal order becomes final and occurs outside of formal removal proceedings. See 8 C.F.R. § 241.6(a). Because seeking to stay Candra's removal order is effectively delaying or cancelling his removal order, under Hamdi the Candra Children's APA claim is likely within the jurisdictional bar to the extent it seeks an injunction or stay. Furthermore, the Government makes a strong argument that ICE's decisions on stay applications are "committed to agency discretion by law" and therefore unreviewable under the APA. 5 U.S.C. § 701(a)(2).

16

The Candra Children are also seeking a declaration that ICE has instituted a new policy of denying all stay applications in contravention of its own regulations requiring consideration of multiple factors without going through the required rulemaking process. See Perez v. Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1206 (2015) (noting that agencies must "use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"). The Court likely has jurisdiction to examine a challenge to the agency's decision to revoke a rule without going through the regular rule-making procedures. See Smriko, 387 F.3d at 291 & n.7.

The Court need not decide these difficult jurisdictional questions. The First Circuit has authorized courts to bypass complex questions concerning statutory jurisdiction in the immigration context where "precedent clearly adumbrates the results on the merits." Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007). As discussed below, the Candra Children fail to state a claim because the Court cannot stay their father's removal. The Court therefore assumes without deciding that it has jurisdiction over the Candra Children's APA-based claim.

## II.  **Failure to State a Claim**

The Government also argues that Count II should be dismissed under Rule 12(b)(6). In analyzing whether a complaint

17

states a claim sufficient to satisfy Rule 12(b)(6), the Court must set aside any statements that are conclusory and examine only the pleader's factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

A complaint fails to state a claim if the court cannot grant the remedy the plaintiff seeks to redress the violation of his rights. See Armstrong v. Jefferson Smurfit Corp., 30 F.3d 11, 12-13 (1st Cir. 1994) (affirming a Rule 12(b)(6) dismissal of a complaint claiming breach of fiduciary duty under ERISA because ERISA did not permit the court to award the remedy the plaintiffs sought); cf. Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 398 (1979) (noting that an argument concerning "the existence of a remedy for the alleged violation of [the plaintiff's] federal rights" raises a cause-of-action problem).

The Candra Children raise a plausible argument that ICE violated the regulation governing administrative stays of removal. 8 C.F.R. § 241.6(a) requires ICE to consider the

"factors listed in 8 C.F.R. 212.5 and section 241(c) of the" INA
in determining whether to grant a stay of removal. The letter
from ICE granting Candra a stay of removal in 2013 refers to his
U.S. citizen children, Zhafirah's medical condition, his
community ties, and his lack of criminal history. By contrast,
the letters Candra received denying his two latest stay
applications state only that ICE "carefully reviewed [his] file,
as well as the factors addressed in the Application for a Stay
of Deportation or Removal." Docket No. 3, Exs. P-Q. With no
evidence in the record of changed circumstances, the ipse dixit
change in position without apparent examination of the factors
or explanation of the about-face supports a reasonable inference
that the agency did not consider any of the factors. See
Haoud v. Ashcroft, 350 F.3d 201, 207 (1st Cir. 2003) ("An agency
cannot merely flit serendipitously from case to case, like a bee
buzzing from flower to flower, making up the rules as it goes
along." (quoting Henry v. INS, 74 F.3d 1, 6 (1st Cir. 1996))).

The Candra Children also have a plausible procedural due
process claim. In Kerry v. Din, the Supreme Court failed to
reach a majority decision on whether a U.S. citizen has
procedural due process rights in the adjudication of an alien
spouse's visa petition based on a liberty interest in living
with him in the United States. See 135 S. Ct. 2128, 2131, 2139,
2142 (2015); see also Ali v. United States, 849 F.3d 510, 515

19

n.3 (1st Cir. 2017) (recognizing that <u>Din</u> "did not produce a definitive answer" to this question). The Candra Children may have a corresponding liberty interest in living with their father in the United States, which they argue they were deprived of in violation of their procedural due process rights. This is far from clear, however, because the First Circuit has ruled that children do not have a substantive due process right to challenge an otherwise valid deportation. <u>See</u> <u>Payne-Barahona v. Gonzáles</u>, 474 F.3d 1, 2-3 (1st Cir. 2007) (holding pre-<u>Din</u> in the context of a substantive due process claim that, in the absence of "conscience shocking" activity, "a parent's otherwise valid deportation does not violate a child's constitutional right").

Even if ICE acted unlawfully or unconstitutionally by failing to follow its own regulations or revoking the regulation without going through proper administrative procedures, the Court cannot grant the remedy the Candra Children seek. <u>See</u> <u>Hamdi</u>, 620 F.3d at 627-29. They ask the Court to stay their father's removal or vacate the denial of his stay application, at least while ICE provides a more detailed decision on his application. 8 U.S.C. § 1252(b)(9) channels "review of <u>all</u> legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." <u>Aguilar</u>,

510 F.3d at 9. While this provision does not strip the Court of jurisdiction to adjudicate claims involving the Candra Children's distinct constitutional rights, it does prevent the Court from staying their father's removal order. <u>Hamdi</u>, 620 F.3d at 628-29. This Court simply does not have the jurisdiction to interfere with the execution of a removal order. <u>Tejada v. Cabral</u>, 424 F. Supp. 2d 296, 298 (D. Mass. 2006); <u>see also</u> <u>Ma v. Holder</u>, 860 F. Supp. 2d 1048, 1061 (N.D. Cal. 2012) (noting that, regardless of how plaintiffs frame their argument, seeking to "halt a final order of removal . . . strips this Court of jurisdiction").

It is possible that declaratory relief challenging ICE's alleged policy of not following its own regulations remains available even if the Court is stripped of jurisdiction to bar or stay a removal. Because the Court cannot provide the remedy the Candra Children seek, Count II is dismissed for failure to state a claim.

<u>**ORDER**</u>

For the foregoing reasons, the Government's motion to dismiss (Docket No. 25) is <u>**ALLOWED**</u> without prejudice to amending the complaint within 60 days to seek alternative relief. The Court stays Candra's removal during this time period so that an amendment or appeal can be filed. Plaintiffs' motions for a

temporary restraining order (Docket No. 2) and preliminary

injunction (Docket No. 8) are **DENIED** as moot.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief U.S. District Judge